UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHRISTOPHER KELLEY**, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **ENHANCED RECOVERY COMPANY, LLC**, et al., <br><br> Defendants. | Civil Action No. 15-6527 (CCC) <br><br> **OPINION** |

**Falk, U.S.M.J.**

This matter comes before the Court upon the informal application of nonparty Cellco Partnership d/b/a/ Verizon Wireless ("Verizon") to quash a deposition subpoena served by Plaintiff Christopher Kelley. (CM/ECF No. 31.) The application is opposed. (CM/ECF No. 32.) The application is decided on the papers. Fed. R. Civ. P. 78(b). For the reasons set forth below, Verizon's application is **granted**.

**BACKGROUND**

A. **Factual Background**

This is a putative class action brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Defendant Enhanced Recovery Company,

LLC ("ERC")  is a "debt collector" and Plaintiff Christopher Kelley ("Plaintiff") is a "consumer" as defined by the FDCPA.  (Compl. ¶¶ 14, 15.)  According to Plaintiff, ERC sent him a letter on March 13, 2015, attempting to collect on an amount due to Verizon.  (Id. at ¶19.)  The letter allegedly stated that Plaintiff owed $1,455.98, of which $120.21 was a "collection fee."  (Id. at ¶¶ 20-21.)  Plaintiff claims that he did not owe Verizon a collection fee nor had ERC charged or billed Verizon for such a collection fee.  (Id. at ¶¶ 23-24.)  Plaintiff also asserts that ERC sent similar letters to more than 50 consumers in New Jersey demanding collection fees that had not yet been charged to or paid by Verizon as of the time the letters were sent.  (Id. at ¶19.)

On August 31, 2015, Plaintiff filed suit on behalf of himself and all others similarly situated against ERC alleging that it violated the FDCPA in connection with its attempts to collect a debt owed to nonparty Verizon.  Specifically, Plaintiff alleges that the sum sought to be collected included an amount for collection fees which violated the FDCPA.  On October 14, 2015, ERC filed an Answer denying any liability contending that the amounts sought to be collected were expressly authorized by Plaintiff's contract with Verizon pursuant to 15 U.S.C. § 1692(f)(1).  (CM/ECF No. 4.)

According to Verizon, on December 18, 2015, it was served by Plaintiff with a subpoena to produce documents ("Document Subpoena") seeking: (1) all contracts between Verizon and ERC since August 31, 2014; (2) all documents supplied to ERC with respect to Plaintiff's account; (3) Verizon's complete file for Plaintiff; (4) all documents related to the placement for collection of Plaintiff's account with ERC; (5) a

list of payments made to Verizon by ERC relating to the collection of Plaintiff's account; (6) a list of payments made to ERC by Verizon relating to the collection of Plaintiff's account, and (7) a list of all New Jersey accounts placed with or referred to ERC for collections since August 31, 2015. (Verizon's Letter Brief in Support ("Verizon Br.") at 3-4.) According to Verizon, the vast majority of the documents sought were already or could have been produced by ERC. The parties agreed to a narrower scope and on March 3, 2016, Verizon produced all responsive documents in its possession. (Verizon Br. at 4.) Then, in April 2016, at the request of ERC, Verizon provided a declaration of Renada Lewis, Senior Analyst in Customer Service at Verizon based in New York ("Lewis Declaration") which identified the dates on which Plaintiff's telephone numbers were activated and became inactive, and the version of Verizon's customer contract that was in effect when Plaintiff's phone number became inactive. (Verizon Br. at 4.)

      On May 17, 2016, Plaintiff served a Deposition Subpoena demanding that Verizon produce a corporate representative to testify as to the documents already produced by Verizon pursuant to the Document Subpoena, and also seeking testimony regarding "[a]ll documents . . . created, drafted or signed by Renada Lewis" relative to Plaintiff. (Verizon Br. at 5, Ex. A.) Following a meet and confer by the parties, Plaintiff agreed to forego some of the discovery sought but still insisted that Verizon produce a representative regarding (1) how Verizon calculated the collection fee it charged Plaintiff and (2) how the Lewis Declaration "came about." (Verizon Br. at 5-6.) Verizon objected to the Deposition Subpoena maintaining that the information was disclosed already in the documents produced, is readily available from ERC, or is entirely irrelevant. (Id. at 6.)

3

### B. Present Application

On August 3, 2016, Verizon moved to quash the Deposition Subpoena arguing that it mirrors items 1 through 4 of the Document Subpoena and seeks duplicative and irrelevant information. Verizon contends that Plaintiff presently possesses all of the information regarding the collection fee Verizon charged Plaintiff. (Verizon Br. at 9.) Pointing to the fact that it has already been subjected to discovery in this case, Verizon maintained that it made two document productions that encompassed all responsive and relevant documents within its possession, produced a sworn declaration providing additional information about Plaintiff's account, and therefore has disclosed any and all relevant facts within its knowledge. (Verizon Br. at 1.)

Arguing that discovery of how the Lewis Declaration "came about" is irrelevant to any claim or defense in this case, Verizon contends that because ERC obtained the declaration from Verizon and produced it to Plaintiff, it can provide the information Plaintiff seeks. Verizon asserts that the deposition of Lewis would not produce any information that hasn't already been provided as the facts contained in her declaration are based on Verizon's business records and not subject to any credible challenge. (Verizon Br. 12.) Finally, Verizon maintains that how or why Verizon calculates a fee and whether the customer contract permitted Verizon to charge the fee are irrelevant because Verizon's charges are not at issue here. (Id. at 10.)

Plaintiff opposes the application contending that it seeks to learn, among other things, how the fee was charged, when it was charged, who authorizes it, and what law permits the charging of the fee. Rejecting Verizon's characterization of the Deposition

4

Subpoena as a fishing expedition, Plaintiff argues that it should be permitted to depose a Verizon representative to address these fundamental issues. Noting that Verizon "volunteered" to provide ERC with the Lewis Declaration, Plaintiff maintains that it also should be permitted to depose Ms. Lewis as to the statements in her declaration. (Plaintiff's Brief ("Pl.'s Br.") at 1-2.)

## DISCUSSION

### A. Relevant Law

The scope of discovery while broad, is not limitless. Rule 26(b)(2)(C) specifically requires courts to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome , or less expensive" and where "the burden or expense of the proposed discovery outweighs its likely benefit . . . ." Rule 26(b)(2)(C). Discovery sought by a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b). OMS Investments, Inc. v. Lebanon Seaboard Corp., 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008).

Rule 45 provides that the court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "A subpoena is considered unduly burdensome when it 'is unreasonable or oppressive'" Schmulovich v. 1161 Rt. 9 LLC, 2007 WL 2362598, *4 (D.N.J. Aug. 15, 2007) (quotations omitted). A nonparty to an action "is afforded greater protection from discovery than a normal party." Chazanow v. Sussex Bank, 2014 WL 2965697, at *3 (D.N.J. July 1, 2014) (granting nonparty's motion to quash subpoena); see also Stamy v. Packer, 138 F.R.D. 412, 419 (D.N.J. 1990)

("the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery"). Discovery from a nonparty is unduly burdensome where the information sought has already been, or can be obtained from other means. See In re Centrix Financial, LLC, 2012 WL 6625920, at *6 (D.N.J. Dec. 18, 2012) (quashing subpoenas to nonparties in part because information was already available to defendants and thus would be duplicative).

### B. Decision

#### (1) *Deposition Subpoena Regarding the Collection Fee*

First, the crux of Plaintiff's complaint is that the collection fees were not permitted by the FDCPA. ERC's Answer states that the contract with Verizon expressly authorized the collection of collection fees. (CM/ECF No. 4.) The assessment and the amount of the fee is disclosed in the documents already produced by Verizon. For this reason, the questions Plaintiff apparently wants answered–how is the fee charged? what applicable law permits the charging of such a fee? in the event ERC settles for less than the total amount of the debt, does ERC still receive the fee?– are of questionable relevance and in any event, are more appropriately directed to ERC.

Second, the assessment and amount of the fee has been disclosed in the documents already produced by Verizon. These show that Verizon charges the fee pursuant to its customer contract with Plaintiff. The Lewis Declaration identifies the specific version of Verizon's customer contract that bound Plaintiff. (Verizon's Br., Ex. D at ¶ 6, and Ex.1.) The customer contract provided: "If you fail to pay on time and Verizon Wireless refers your account(s) to a third party for collection, a collection fee will be assessed and . . .

6

will be calculated at the maximum percentage permitted by applicable law, not to exceed 18 percent." (Verizon Br., Ex. D at ¶ 6 and Ex. 1, p.5.) Verizon has also produced the screenshot from its electronic database that demonstrates that Verizon instructed ERC to collect the fee in addition to the principal amount due. (See Verizon Br. at 9, Ex. E.) That Verizon instructed ERC to collect the fee is evident from the documents. Those are the only facts relevant to Plaintiff's claim against ERC under the FDCPA. Verizon's internal practices regarding the collection of fees is irrelevant as Verizon is not a party to this action. See Pollice v. National Tax Funding, L.P., 225 F.3d 379, 403 (3d Cir. 2000) ("The FDCPA's provisions generally apply only to 'debt collectors'....Creditors – as opposed to 'debt collectors'– generally are not subject to the FDCPA."); see also Lewis v. ACB Business Services, Inc., 135 F.3d 389, 402 (6th Cir. 1998) (finding that questions of whether debt collector sent debtor a collection letter pursuant to a contract with the creditor or whether it acted outside the terms of any contract had "no relevance to whether [the creditor's] activities at issue . . . were a violation of the FDCPA.").

    Verizon has represented to the Court that it has produced "all of the information regarding Verizon's calculation of the collection fee." (Verizon Br. at 9.) Plaintiff has not specified any information that is missing or that needs to be acquired through deposition. Any information sought by Plaintiff can be obtained by less burdensome means than the deposition of a Verizon representative. In fact, Verizon had offered to produce a declaration clarifying any information in the documents already produced to the extent that is not clear from the face of the documents. (Verizon Br. 9-10.) Therefore, the discovery sought "can be obtained from some other source that is more convenient,

less burdensome, or less expensive." Fed. R. Civ. R. 26(b)(2)(C). Verizon, a nonparty, is afforded greater protection than a party to a case. See Chazanow, 2014 WL 2965697, at *3. Accordingly, the Court grants Verizon's motion to quash the Deposition Subpoena of a Verizon corporate representative seeking testimony regarding the collection of fees.

**(2)** *Deposition Subpoena of Ms. Lewis*

The Court finds that Plaintiff has failed to demonstrate how testimony regarding how the Lewis Declaration "came about" has relevance in this case. The Lewis Declaration identified basic facts about Plaintiff's account, such as the dates that Plaintiff's telephone numbers were activated and became inactive, and the Verizon customer contract in effect when Plaintiff's phone numbers became inactive. Plaintiff has not identified any area of the Lewis Declaration that is incomplete or needs supplementation. According to Verizon, the facts in the declaration are based on its business records, and a deposition regarding them would not reveal any other information. (Verizon Br. at 12.) ERC obtained the Lewis Declaration from Verizon and produced it to Plaintiff in discovery. Plaintiff has not countered Verizon's argument that the information should be sought from ERC. Nor has Verizon challenged Verizon's contention that information related directly to Verizon's internal preparation of the Lewis Declaration may be privileged given that they were handled by Verizon's in-house counsel in connection with this litigation. Finally, although Plaintiff's counsel and Verizon's General Counsel had "amicable discussions" about the possible deposition of Ms. Lewis, it appears that no agreement was reached and hence Verizon is not precluded from moving to quash the subpoena. (Pl.'s Br. at 2.)

8

The standard for nonparty discovery requires a stronger showing of relevance than for simple party discovery. Plaintiff has failed to demonstrate any need for Ms. Lewis's deposition. Thus, the Court finds that the benefit, if any, of a deposition of Ms. Lewis is outweighed by the burden of compelling her to appear for a deposition.

## CONCLUSION

For the reasons stated above, Verizon's application to quash Plaintiff's deposition subpoena is **granted.**

                                             s/Mark Falk
                                             **MARK FALK**
**Dated: October 7, 2016**                 **United States Magistrate Judge**